**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

```
KENNETH R. NUCKOLS            )
                              )
Plaintiff,                    )
                              )
vs.                           )        NO. 1:13-CV-267
                              )
CAROLYN W. COLVIN,            )
COMMISSIONER OF THE           )
SOCIAL SECURITY ADMINISTRATION )
                              )
Defendant.                    )
```

<u>**OPINION AND ORDER**</u>

This matter is before the Court for review of the Commissioner of Social Security's decision denying Disability Insurance Benefits to Plaintiff, Kenneth R. Nuckols. For the reasons set forth below, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

<u>BACKGROUND</u>

On October 22, 2010, the Plaintiff, Kenneth Nuckols, filed an application for Disability Insurance Benefits ("DIB"). Nuckols alleged that his disability began on August 8, 2009, due to a fractured back (requiring spinal fusion), a titanium rod that ran from his knee to his ankle, sleep apnea, emphysema, left shoulder problems, and high blood pressure. (Tr. 20, 181).

The Social Security Administration denied his initial application and also denied his claims on reconsideration. On March 16, 2012, the Plaintiff appeared with counsel, Mark Mora, at an administrative hearing before Administrative Law Judge ("ALJ") Warnecke Miller ("Miller"). (Tr. 35-70). Testimony was provided by Nuckols and Marie Kieffer (a vocational expert or "VE"). (Tr. 35-70). On June 6, 2012, ALJ Miller denied the claimant's DIB claim, finding that Nuckols was not disabled because he could perform a significant number of jobs in the national economy, despite his limitations. (Tr. 20-29).

On June 29, 2012, Nuckols requested that the Appeals Council review the ALJ's decision and the request was denied on July 19, 2013. (Tr. 1). Accordingly, the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a)(2005). The claimant has initiated the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

DISCUSSION

Nuckols was born on October 10, 1958. (Tr. 27). Nuckols alleges the following impairments: fractured back that required spinal fusion, titanium rod from knee to ankle, sleep apnea, emphysema, left shoulder problems, and high blood pressure. (Tr. 181). Nuckols has at least a high school education and is

able to communicate in English. (Tr. 28). In the past fifteen years, Nuckols has worked as a metal products fabricator. (Tr. 27, 42-44).

The medical evidence[1] can be summarized as follows:

Lumbar Spine

Prior to his alleged onset date of August 8, 2009, Nuckols' primary care physician, Dr. Thomas M. Lee, on June 16, 2008, diagnosed him with degenerative disk disease and degenerative joint disease and noted that the pain medication Tramadol was not working. (Tr. 291). By October 31, 2008, Dr. Lee noted increased back pain with right radicular leg pain. (Tr. 289). Nuckols worked for the next six months and while working on May 13, 2009, suffered an injury resulting in severe back pain, which led to an emergency room visit. (Tr. 246).

Nuckols attempted physical therapy from May 27, 2009, through June 3, 2009. (Tr. 247). On July 21, 2009, an MRI of the lumbar spine confirmed the following:

1. Multilevel degenerative lumbar spondylosis [;…] Grade 1 Spondylolisthesis of L5 on S1; Severe L2-3 disc narrowing with mild central canal stenosis.
2. Large left paracentral T10-T11 disc herniation or spinal stenosis and encroachment on the thoracic cord;
3. Findings suspicious for right lateral L5-S1 disc protrusion with encroachment on the right L5-S1 neural foramen […]

(Tr. 250).

---

[1] The medical evidence in this case is largely undisputed and the Court has therefore relied heavily on the facts as presented in Nuckols' opening brief, supplementing and editing where necessary.

Dr. Lee prescribed morphine sulfate to address the increased pain. (Tr. 289). At the May 8, 2009, August 14, 2009, and November 13, 2009, visits, Dr. Lee upgraded Nuckols back pain to chronic and continued to refill the morphine sulfate prescription. (Tr. 286-88). The morphine was supplemented with Tramadol at the August visit. (Tr. 287). On April 9, 2010, his neurosurgeon, Dr. Juluis Silvidi, fine-tuned the diagnosis (Right L5 radiculopathy with motor and sensory deficit and L5 spondylosis with spondylolisthesis and right-sided foraminal disc protrusion). (Tr. 267). Then Dr. Silvidi performed an L5 Gill laminectomy with L5-S1 spinal fusion on April 9, 2010 (Tr. 302-304). On July 31, 2010, Dr. Silvidi released him back to work, warning him of the potential for L4-L5 deterioration in the future. (Tr. 304). Nuckols, at the time, also reported relief of right leg pain that was present preoperatively, with less residual back pain and had been physical active at home involving some tree trimming. *Id.*

In August 2010, Nuckols returned to work but was unable to continue after about three weeks due to back pain issues and pain medication concerns. (Tr. 56-57). On December 13, 2010, a State Agency consultative examiner, Dr. Melanie Gatewood, noted that Nuckols had "pulling" back pain during straight-leg-raise testing. (Tr. 324). Post-surgery radiographs, taken on December 13, 2010, by Dr. Joseph Gaddy, revealed L5-S1

-4-

spondylolisthesis, L4-L5 facet arthropathy, discogenic degenerative changes with narrowed interspaces at L2-L3, and mild dextroscoliosis. (Tr. 328). Dr. Gaddy identified range of motion deficits in the lumbar spine in relation to forward flexion, extension, and lateral flexion. (Tr. 326). Nuckols testified about significant back pain that was aggravated by activity, interfered with his sleep and persisted despite treatment with pain medication. (Tr. 47-48, 51, 59). The pain medication caused nausea and drowsiness, requiring Nuckols to take naps and to limit head movement during periods of nausea. (Tr. 61).

In May 2011, Nuckols sought emergency room treatment for right foot pain after falling off his motorcycle. He was described as alert, oriented, and cooperative and exhibiting appropriate mood and affect. (Tr. 351-67).


Thoracic Spine and Cervical Spine

Nuckols also testified that he suffered from mid-back pain. (Tr. 47). The MRI taken on July 21, 2009, identified a large left paracentral T10-T11 disc herniation or spinal stenosis and encroachment on the thoracic cord. (Tr. 250). These thoracic spine problems have not been surgically addressed, but Dr. Silvidi emphasized their seriousness by assigning a whole person permanent partial impairment rating of 8% according to the AMA

Guidelines. (Tr. 303). On examination December 13, 2010, the examining physician identified range of motion deficits in the cervical spine in relation to flexion, extension, and lateral flexion. (Tr. 326).

Shoulders

Nuckols described left shoulder problems that originated from an old motorcycle accident, causing his shoulder to pop out of socket and cause intense pain (Tr. 55-56). Despite the persistence of this problem over the years, Nuckols continued to work. *Id*. Dr. Gaddy, the State Agency consultative examiner, identified range of motion deficits in the left shoulder in relation to abduction, forward elevation, and internal rotation. (Tr. 326). Dr. Gaddy also identified right shoulder deficits in internal rotation. *Id.* Radiographs confirmed left acromioclavicular ("AC") joint anthropathy. (Tr. 327).

Lower Extremity (Unrelated to Lumbar Spine)

Nuckols has chronic leg pain secondary to fracture repair with an intramedullary titanium rod from knee to ankle. (Tr. 181, 243).

<u>Other Medical</u>

Nuckols has also suffered from other medical problems. Dr. Lee diagnosed him with anxiety that is treated with Diazepam. (Tr. 390, 291). Dr. Lee also diagnosed him with long-term hypertension and prescribed Lisinopril. (Tr. 385; 390). Dr. Helen A. Borgenheimer diagnosed him with bilateral otitis media in January of 2012, and prescribed him antibiotics. (Tr. 413). Finally, he was treated for sleep apnea with uvulopalatoplasty. (Tr. 243).

<u>Nuckols' Testimony</u>

Nuckols testified that he suffers from constant back pain at a level "7" or "8" that is of cramping nature and feels like a dull knife is being stuck into his back. (Tr. 47). Nuckols stated that when he was trying to work, he was taking two pain pills per hour.[2] (*Id.*). He has taken Tramadol, Diazepam, and Tylenol Arthritis on an ongoing basis. (Tr. 47-48). Nuckols is allergic to most pain medications and has tried therapy where he

---

[2] The Court notes that Nuckols' testimony makes clear that this was not an ongoing circumstance, but the result of an attempt to work despite his pain. Both the ALJ's opinion (Tr. 25) and the Commissioner's brief (DE #24 at 7) state that he was taking two pain pills per hour without making the important clarification that this occurred for only a very brief period of time as a result of an attempt to return to work. (Tr. 47). In explaining why he cannot work, Nuckols stated in part:

> The pain. The pain pills. Nobody is going to let me work all day with eating pain pills all day to get through. …I tried [to work], I tried, but it just wouldn't work. I couldn't do it. I was eating two pain pills an hour and that's way too much.

(Tr. 47).

was taught mind games to move his pain to another part of his body. (Tr. 48). He lies in a bed or recliner during the day and he naps during the day. (Tr. 49). When napping he claims that he must use a special wedge-shaped pillow. (Tr. 58). Nuckols also stated that his left arm pops out of the socket. (Tr. 55). He also claims that he is only able to stand for ten to fifteen minutes at a time, sit for twenty to thirty minutes at a time and can only lift twenty to forty pounds and walk just five blocks at a time. (Tr. 55-59, 62). He also stated that he can only drive short distances because he needs to stretch his back and that he wears a back brace. (Tr. 60).

Nuckols further testified that he has lung problems that cause him to experience shortness of breath. (Tr. 62). He also claims that his pain medication makes him nauseous. (Tr. 61). Nuckols continued by stating he could only hold his thirty-five pound granddaughter for five to ten minutes at a time. (Tr. 59) He further stated that it takes him over two hours to mow the lawn where it used to take him forty-five minutes, and after mowing he has to stay in bed for at least a day. (*Id.*).

Nuckols testified that recently he has been suffering from chronic earaches and sinusitis, which makes him nauseated and dizzy, that may make it so that he needs tubes inserted into his ears. (Tr. 40). Nuckols stated that prior to the hearing he could not afford to see a doctor for his back. (Tr. 236). He

also complained of headaches and not being able to play ball with his grandchildren. (Tr. 51, 221). Nuckols says he has sleep apnea and left shoulder problems and that he suffers from high blood pressure. (Tr. 181). Prior to the hearing he stated that he had trouble putting his pants on, difficulty bending and cannot always finish what he starts. (Tr. 192-95). He has difficulty squatting, kneeling and climbing stairs. (Tr. 196).

Nuckols daughter, Ms. Dodds also stated prior to the hearing that Nuckols has difficulty sleeping, mows sometimes but takes a lot of breaks and walks like an old grandpa. (Tr. 201-05). Ms. Dodds further stated that Nuckols has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and climbing stairs. (Tr. 205).

Review of Commissioner's Decision

This Court has authority to review the Commissioner's decision to deny social security benefits. 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." *Id*. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quotation omitted). In determining whether substantial evidence exists, the Court shall examine the record

in its entirety, but shall not substitute its own opinion for the ALJ's by reconsidering the facts or reweighing the evidence. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). With that in mind, however, this Court reviews the ALJ's findings of law de novo and if the ALJ makes an error of law, the Court "may reverse without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

As a threshold matter, for a claimant to be eligible for benefits under the Social Security Act, the claimant must establish that he is disabled. To qualify as being disabled, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382(a)(1). To determine whether a claimant has satisfied this statutory definition, the ALJ performs a five-step evaluation:

> Step 1: Is the claimant performing substantial gainful activity: If yes, the claim is disallowed; if no, the inquiry proceeds to step 2.
>
> Step 2: Is the claimant's impairment or combination of impairments "severe" and expected to last at least twelve months? If not, the claim is disallowed; if yes, the

inquiry proceeds to step 3.

Step 3: Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404 Subpt. P, App. 1? If yes, then claimant is automatically disabled; if not, then the inquiry proceeds to step 4.

Step 4: Is the claimant able to perform his past relevant work? If yes, the claim is denied; if no, the inquiry proceeds to step 5, where the burden of proof shifts to the Commissioner.

Step 5: Is the claimant able to perform any other work within his residual functional capacity in the national economy: If yes, the claim is denied; if no, the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v); see *also Herron v. Shalala*, 19 F.3d 329, 333 n. 8 (7th Cir. 1994).

In this case, the ALJ found that Nuckols suffered from the following severe impairments: chronic back pain from spinal fusion, emphysema, obesity, and chronic left shoulder pain. (Tr. 22). The ALJ also found that Nuckols does have a medically determinable mental impairment, anxiety, but his anxiety does not significantly limit his ability to perform basic work-related activities. (Tr. 23). The ALJ found that Nuckols was at most, only mildly limited by his mental impairment in his ability to perform activities of daily living, maintain social functioning, and sustain concentration, persistence, or pace. (Tr. 24).

The ALJ found that Nuckols does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). *Id*. The ALJ found that Nuckols has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) but with the following additional limitations: only occasionally able to push and pull, as well as reach overhead, with his left upper extremity; cannot climb ladders, ropes, or scaffolds and he can only occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, gases, poorly ventilated areas, and chemicals. (Tr. at 24). After considering Nuckols' age, education, work experience and RFC, the ALJ relied upon the testimony of a VE and concluded that Nuckols was not disabled and not entitled to DIB because he is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 29). Thus, Nuckols' claim failed at step five of the evaluation process.

Nuckols believes the ALJ's opinion demonstrates that the ALJ committed several errors requiring reversal. Nuckols asserts that the ALJ's credibility determination is inadequate because it contravenes the direction of the Seventh Circuit

Court of Appeals in that the ALJ utilized disapproved boilerplate without identifying and analyzing specific material statements or testimony in relation to credibility. (DE #19 at 12). Nuckols also alleges the ALJ erred by overemphasizing daily activities. *Id.* Nuckols further alleges that the ALJ failed to consider his consistent and arduous work history in determining his credibility. *Id.* Additionally, Nuckols alleges that it was an error not to incorporate the limiting effects related to the thoracic spine, cervical spine range of motion deficits, internal rotation deficit of the right shoulder, and internal rotation deficit of the left shoulder into the RFC, and that it was an error not to consider the combined impact of all impairments. *Id.* Finally, Nuckols alleges that the ALJ erred by failing to award at least a period of disability and by failing to provide a meaningful explanation for the conclusion that there has been no twelve-month period in which Nuckols has been unable to sustain full time work. *Id.* As a result of these errors, Nuckols asserts that the ALJ's opinion should be reversed he should be awarded past-due and future disability insurance benefits and Medicare benefits. *Id.* In the alternative, Nuckols requests that this cause be remanded so that a new hearing can be held. *Id.*

## The ALJ's Credibility Determination

Nuckols claims that the ALJ failed to properly evaluate the credibility of his testimony by employing disapproved boilerplate language without identifying and analyzing specific material statements or testimony and overemphasized Nuckols testimony concerning daily activity. (DE #19 at 15-17). Because the ALJ is best positioned to judge a claimant's truthfulness, this Court will overturn an ALJ's credibility determination only if it is patently wrong. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). "It is only when the ALJ's determination lacks any explanation or support that [a court] will declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008)(citing *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003)). However, when a claimant produces medical evidence of an underlying impairment, the ALJ may not ignore subjective complaints solely because they are unsupported by objective evidence. *Schmidt v. Barnhart*, 395 F.3d 737, 745-47 (7th Cir. 2005). Instead, the ALJ must make a credibility determination supported by record evidence and be sufficiently specific to make clear to the claimant and to any subsequent reviewers the weight given to the claimant's statements *and the reasons for that weight*. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003)(emphasis added).

In evaluating the credibility of statements supporting a Social Security Application, the Seventh Circuit Court of Appeals has noted that an ALJ must comply with the requirements of Social Security Ruling 96-7p. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). This ruling requires that ALJs articulate "specific reasons" behind credibility evaluations; the ALJ cannot merely state that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." SSR 96-7p. Furthermore, the ALJ must consider specific factors when assessing the credibility of an individual's statement including:

1. The individual's daily activities;

2. The location, duration, frequency and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medications the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; *see also Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003).

As noted earlier, Nuckols is critical of the ALJ's credibility determination because the ALJ relies on "boilerplate" language that has been criticized by the Court of Appeals for the Seventh Circuit. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). The ALJ stated the following regarding Nuckols' credibility:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the statements made by the claimant and Ms. Dodds concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the claimant's residual functional capacity.

(Tr. 26). In *Bjornson*, the Seventh Circuit noted:

> One problem with the boilerplate is that the assessment of the claimant's "residual functional capacity" (the bureaucratic term for ability to work) comes later in the administrative law judge's opinion, not "above" – above is just the foreshadowed conclusion of that later assessment. A deeper problem is that the assessment of a claimant's ability to work will often . . . depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards.

671 F.3d at 645. Yet, as noted by the Court in *Adams v. Astrue*,

> While this sort of boilerplate is
> inadequate, *by itself*, to support a
> credibility finding, its use, does not make
> a credibility determination invalid. Not
> supporting a credibility determination with
> explanation and evidence from the record
> does.

880 F. Supp. 2d 895, 906 (N.D. Ill. 2012)(emphasis in original)
(citations omitted). In *Adams*, the ALJ's decision did not use
the boilerplate language in a mechanical fashion, and the ALJ
offered further explanation to support his conclusion that
plaintiff's claimed limitations were not supported by the record
as a whole. *Id.* at 906-08. Accordingly, the Court determined
that reversal was not warranted.

In this case, the ALJ considered some of the factors listed
in SSR 96-7p. The ALJ discussed Nuckols' activities of daily
living at length. He considered the treatment Nuckols received
and the medication he takes. But, as well as not discussing a
few of the factors, the ALJ provided very little explanation of
what it was about these considerations that caused the ALJ to
believe that Nuckols was less than fully credible. The ALJ did
not make the necessary connections between the facts and his
credibility determination. The ALJ stated that:

> The residual functional capacity assessment
> is essentially consistent with (although
> slightly more restrictive than) the State
> Agency assessment that the claimant was able
> to perform light work that did not involve
> more than occasional climbing balancing,
> stooping, kneeling, crouching, or crawling

(Ex. 16F, 19F).  There is no medical opinion
of record to support a more restrictive
assessment of the claimant's residual
functional capacity than acknowledged by the
undersigned or that fully corroborate the
allegations made by the claimant and his
daughter regarding his physical condition.

The claimant's activities also do not
support a more restrictive assessment of his
residual functional capacity or fully
corroborate the aforementioned allegations
made by the claimant and Ms. Dodds. The
record reflects that the claimant is able to
prepare simple meals, do some cleaning and
laundry, watch news on the television,
listen to music, drive, care for his
personal needs independently, shop for
groceries when he has money, and watch his
grandchildren play ball at their games.  He
also stated that he sometimes went out to
eat with his friends.  The claimant's
daughter, Ms. Dodds, reported that he was
able to ride his motorcycle (although not as
long as he used to (Ex. 5E, 6E, claimant's
testimony).

(Tr. 26).

Here, the ALJ just used a recitation of daily activities as

the basis for the credibility assessment as well as reciting

some of the findings from the State Agency assessment.  However,

the ALJ's recitation of daily activities is insufficient.  In

*Bjornson*, the Court stated:

The critical differences between activities
of daily living and activities in a full-
time job are that a person has more
flexibility in scheduling the former than
the latter, can get help from other
persons . . ., and is not held to a minimum
standard of performance, as she would be by
an employer.  The failure to recognize these

-18-

> differences is a recurrent, and deplorable,
> feature of opinions by administrative law
> judges in social security disability cases.

671 F.3d at 647. In this case, the ALJ did not take into account Nuckols' statements about the need for rest after short periods of any activity, how physical activities aggravate pain which then lead to taking more pain medication, which makes him nauseous and drowsy. There was no connection to how the ability to perform minor daily activities can translate into the ability to sustain light work on a regular and continuous basis. The mere recitation of daily activities without more provides no meaningful basis for review and does not satisfy the requirements of the *Bjornson* line of cases.

The ALJ did not make the necessary connections between the facts and his credibility determination. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (where an ALJ failed to analyze the factors set forth in SSR 96-7p, the ALJ did not build a logical bridge between the evidence and his conclusion that the claimant's testimony was not credible). The VE testified, in regards to the amount of breaks Nuckols claims he needs and days off he would need, that the claimant would not be able to perform any of the jobs the VE listed with his restrictions even at a light level. (Tr. 68-69). The ALJ considered symptoms and the extent that the symptoms can reasonably be accepted as consistent with objective medical

evidence and other evidence based on the requirements of 20 C.F.R. 404.1529 and SSR 96-4p and 96-7p. However, in acknowledging this the ALJ did not explain how the record evidence undermined those allegations. The ALJ did point out that:

> Following his lumbar spine surgery, the claimant reported improvement in his back and leg pain to Dr. Silvedi. In July 2010, he told Dr. Silvedi that he was physically active at home involving tree trimming. Dr. Silvedi released the claimant to return to work without restrictions as of July 31, 2010 (Ex. 11F), which was less than twelve full months since the alleged onset date. Dr. Silvedi subsequently gave the claimant a 34% ppi rating (Ex. 11F).

(Tr. 27). The ALJ needs to make a link between these facts and Nuckols' credibility or it is irrelevant to this Court's review of the credibility decision. Because the ALJ failed to build a logical bridge between the evidence and his determination that the claimant's testimony was not credible, remand is required.

Work History Consideration

Nuckols argues that the ALJ did not even discuss his consistent and arduous work history in determining credibility. (DE #19 at 17). A claimant with good work record is entitled to substantial credibility when claiming an inability to work because of a disability. *Porter v. Chater*, 921 F. Supp. 89, 90 (D. Conn. 1996) (citing *Rivera v. Schweiker*, 717 F.2d 719, 725

(2d Cir. 1983).  The ALJ is not required to discuss every piece of evidence but is required to build a logical bridge from the evidence to her conclusions.  *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). Here as determined above, the ALJ did not build a logical bridge between the evidence and his determination that Nuckols' testimony was not credible.  Nuckols work history provides some support for a finding that claimant is credible and was discussed extensively at the hearing, but was not even mentioned in the decision.  On remand, the ALJ should give consideration to Nuckols' work history upon revisiting the issue of credibility.

<u>Nuckols' Remaining Arguments</u>

Having found remand necessary on the basis of the ALJ's inadequate credibility findings, this Court finds no compelling reason to address Nuckols' remaining arguments in detail.  This Court has considered Nuckols' request that this Court award benefits rather than remand the case for additional proceedings but finds remand more appropriate here.  This Court makes no findings regarding the merits of Nuckols' DIB claim.  On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that the ALJ may build a logical bridge between the evidence and his conclusions.

CONCLUSION

For the reasons set forth above, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).


DATED: March 31, 2015              /s/ Rudy Lozano, Judge
                                   United States District Court